USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/26/2020

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**THE BRANDR GROUP,**

      **Plaintiff,**

   −against−

**THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, JANE & JOHN DOE,
AND ABC CORP.,**

      **Defendants.**

**1:19−cv−000974 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

## INTRODUCTION

Plaintiff The Brandr Group ("TBG" or "Plaintiff") brings suit against The Port Authority of New York and New Jersey ("The Port Authority" or "Defendant"), Jane and John Doe, and ABC Corp., seeking a declaratory judgment (count VI) and alleging claims of unjust enrichment (count I), promissory estoppel (count II), quantum meruit (count III), fraudulent misrepresentation (count IV), and misrepresentation (count V). After careful consideration, Defendant's motion to dismiss is **GRANTED**. However, Plaintiff is **GRANTED** leave to amend its Complaint.

## BACKGROUND

Unless otherwise indicated, the following facts are drawn from Plaintiff's Complaint and are assumed as true for the purposes of this motion to dismiss. In 2016, the Parties drafted, but did not sign, a Term Sheet for the "Development and Management of Port Authority's Digital Platforms for the World Trade Center" ("Term Sheet"). Compl. ¶ 15, ECF No. 3. Related to this Term Sheet, Plaintiff also created a World Trade Center Digital Strategy and Plan ("WTC Plan"). *Id.* ¶ 16.

1

In developing WTC Plan, Plaintiff took several actions including: creating websites, engaging third party vendors and social media platforms, writing computer code, developing tourism programs, and investing in cloudhosting and security functions. *Id.* ¶ 17–19. Throughout the Parties' relationship, Defendant encouraged or requested Plaintiff perform such work and make said investments. *Id.* ¶ 20. Defendant also orally provided Plaintiff with assurances that the WTC Plan was approved and that the project would move forward. *Id.* ¶ 21. On at least one occasion, Defendant's staff introduced Plaintiff as Defendant's "Digital Agent" or "Digital Partner." *Id.* ¶ 24. Specifically, in January of 2016, Microsoft executives toured the WTC with the Parties' employees. *Id.* Following the tour, the Parties had a meeting with the executives, where the Defendant's staff referred to Plaintiff as it "Digital Agent" and "Digital Partner." *Id.* A few months later, in April of 2016, Defendant recommended Plaintiff hire a specific contractor to further develop the WTC Plan. *Id.* ¶ 26. Plaintiff then used its funds to hire said contractor. *Id.*

On two separate occasions in June of 2016, a General Manager at Defendant assured Plaintiff that the Defendant's Executive Director would be signing the Term sheet shortly. *Id.* ¶ 28-29. Thereafter, on November 1, 2016, the Parties met to discuss digital strategy, digital design review and social media strategy. *Id.* ¶ 30. During this meeting, the Defendant approved Plaintiff's Strategy/Purpose Plan. *Id.* ¶ 31. Then, in December of 2016, a company entitled Quint Events emailed the Parties, requesting to become the WTC's official travel and tour partner. *Id.* ¶ 32. Defendant's General Manager gave Plaintiff the authorization to act as its agent and to enter into an agreement with Quint Events. *Id.* ¶ 33-35. Similarly, Plaintiff requested authorization, and was ultimately granted permission by the Defendant's General Manager, to engage Google and social media platforms on behalf of the Defendant. *Id.* ¶ 38–44. In total, Plaintiff spent over $2 million on developing the WTC Plan. *Id.* ¶ 14.

In June of 2017, Defendant informed Plaintiff that it would need to submit a proposal through the Requests for Expressions of Interest ("RFEI") process. *Id.* ¶ 45. Defendant assured Plaintiff that the process would be expeditious and perfunctory. *Id.* ¶ 46. On February 6, 2018, after Plaintiff's repeated attempts to formalize the Parties' relationship, Defendant wrote Plaintiff a letter stating that because no executed contract existed, it did not owe Plaintiff anything. *Id.* ¶ 49. The Parties then met on March 6, 2018. *Id.* ¶ 50. Afterwards, on March 28, 2018, Defendant sent Plaintiff correspondence that stated "[u]pon further investigation and review of the documents relating to [TBG's] unsolicited proposal, it is clear that these preliminary and informal discussions between [Defendant] and [Plaintiff] were not binding on either party." *Id.* ¶ 51.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

**DISCUSSION**

As a preliminary matter, Plaintiff's count seeking a declaratory judgment is dismissed. Plaintiff makes no arguments supporting this claim in its opposition brief. Accordingly, the Court deems this claim abandoned. *See Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) (quoting *Johnson v. City of New York*, 15-CV-8195, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017)) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim."); *see also Simpson v. Wells Fargo Bank*, No. 15-CV-1487, 2016 WL 10570967, at *2 (S.D.N.Y. Dec. 15, 2016).

I. **Contract based claims**

   a. **Quasi/Implied Contract**

"Under New York law, a contract implied in fact may result as an inference from the facts and circumstances of the case, though not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506–07 (2d Cir. 2009)). An implied contract is "as binding as one that is express, and similarly 'requires such elements as consideration, mutual assent, legal capacity and legal subject matter.'" *Leibowitz*, 584 F.3d at 507 (quoting *Maas v. Cornell Univ.,* 94 N.Y.2d 87 (N.Y.1999)); *see also Carter v. Katz, Shandell, Katz and Erasmous,* 465 N.Y.S.2d 991, 996 (Sup. Ct.1983) (citations omitted) ("The only difference between an express contract and a contract implied in

4

fact is that in the former the parties arrive at their agreement by words, while in the latter their agreement is arrived at by a consideration of their acts and conduct; in both cases there is, in fact, a contract between the parties, the only difference being the character of the evidence necessary to establish it."). Additionally, to survive a motion to dismiss a plaintiff must allege "sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract." *Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.,* No. 12 Civ. 3239, 2013 WL 3203742, at *3 (S.D.N.Y. June 18, 2013) (quoting *Sang Lan v. Time Warner, Inc.,* No. 11-cv-2870, 2013 WL 1703584, at *5 (S.D.N.Y. Apr. 19, 2013)).

Here, Defendant argues Plaintiff has not adequately pled the elements of mutual assent or consideration. Further, Defendant asserts the Complaint fails to allege the existence of definite terms concerning compensation and the scope of its responsibilities. In response, Plaintiff argues that the term sheet, assurances from the Defendant's General Manager, the approval of the "Strategy/Purpose Plan," and Defendant's authorization of Plaintiff acting as its agent are sufficiently pled to demonstrate mutual assent. Plaintiff further asserts its investment of $2 million in the project constitutes consideration. Lastly, Plaintiff argues the Term Sheet, the WTC Plan, the Strategy/Purpose Plan, and correspondence between the Parties were sufficiently definite. The Court will address each argument in turn.

"For a contract to exist, there must be 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" *Werner v. Selene Fin., LLC*, No. 17-CV-06514, 2019 WL 1316465, at *8 (S.D.N.Y. Mar. 22, 2019) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999)). Although Plaintiff plausibly alleges the Parties reached an agreement as to several terms, Plaintiff's Complaint fails to address the material term

5

of compensation. As a result, Plaintiff has neither sufficiently demonstrated mutual assent to this term nor consideration. *See Werner,* 2019 WL 1316465, at *8 (quoting *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003)) ("[A]n enforceable contract requires mutual assent to the essential terms and conditions thereof."); *Freydl v. Meringolo*, No. 09 CIV. 7196, 2013 WL 1285286, at *5 (S.D.N.Y. Mar. 29, 2013) (quoting *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.,* 667 F.Supp.2d 308, 326 (S.D.N.Y. 2009)) ("The consideration to be paid under a contract is a material term.").

### b. Statute of Frauds

However, even if the Court found the Parties had entered into an implied contract, Plaintiff's first claim would otherwise fail due to the Statute of Frauds. Pursuant to New York's General Obligations Law § 5-701, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . if such agreement . . . [b]y its terms is not to be performed within one year . . ." N.Y. Gen. Oblig. Law § 5-701(a)(1). "This provision of the Statute of Frauds encompasses 'only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year.'" *Guilbert v. Gardner*, 480 F.3d 140, 151 (2d Cir. 2007) (quoting *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362 (1998)). But, a writing is not required where "[t]here is sufficient evidence that a contract has been made. . . ." N.Y. Gen. Oblig. Law § 5-701(b)(3). Such evidence can include: (a) "electronic communication . . . sufficient to indicate that in such communication a contract was made between the parties;" (b)"[a] confirmation in writing sufficient to indicate that a contract has been made between the parties . . . ;" (c) admission through a "pleading, testimony or otherwise in court that a contract was made;"

or (d) "a note, memorandum or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker." *Id.*

In this case, § 5-701(a)(1) is applicable. In fact, Plaintiff alleges it performed under the purported contract for a period of more than one year. Further, Defendant alleges, and Plaintiff does not dispute, the unexecuted Term Sheet included a five-year contract term.[1] *See City Nat'l Bank v. Morelli Ratner, P.C.*, 170 A.D.3d 434, 434 (N.Y. App. Div. 2019). Additionally, for the reasons articulated above, namely the fact Plaintiff does not sufficiently allege consideration or mutual assent, the Court concludes none of the exceptions to the writing requirement applies. Because the Statute of Frauds bars the oral agreement, Plaintiff's quasi-contract and equitable claims must be dismissed as well. *Morgenweck v. Vision Capital Advisors, LLC*, 410 F. App'x 400, 402 n.1 (2d Cir. 2011). Accordingly, Defendant's motion to dismiss is **GRANTED** as to counts one and three.

### II.     Promissory Estoppel

"Under New York law, municipal defendants may not be subject to promissory estoppel claims except in rare cases of 'manifest injustice[.]'" *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019) (citing *N.Y. State Med. Transporters Ass'n, Inc. v. Perales*, 77 N.Y.2d 126, 130-31 (1990)). To state a claim for promissory estoppel under New York law, a plaintiff must allege "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (citation omitted). "Even if a plaintiff can establish those elements, however, promissory estoppel is generally 'not available against a governmental agency engaging in the exercise of its governmental functions.'" *NRP*, 916 F.3d at 202 (quoting

---

[1] Although neither Party submitted the Term Sheet as an exhibit, it is incorporated by virtue of Plaintiff's reference to it in the Complaint. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).

*Advanced Refractory Techs., Inc. v. Power Auth. of State of N.Y.*, 81 N.Y.2d 670, 677 (1993)). Furthermore, "if a putative agreement fails to satisfy municipal contracting requirements, courts will generally dismiss both 'contractual and noncontractual . . . causes of actions, including . . . promissory estoppel." *Id.* at 202 (quoting *Michael R. Gianatasio, PE, P.C. v. City of New York*, 159 A.D.3d 659, 660 (1st Dep't 2018)).

Here, Defendant argues that as a governmental agency, Plaintiff's application was required to gain approval from the Port Authority's Board of Commissioner through the RFEI process. Defendant asserts that because Plaintiff did not follow this process, Plaintiff cannot succeed on its promissory estoppel claim. In response, Plaintiff argues the manifest injustice exception is satisfied because the General Manager made consistent, clear and unambiguous promises to it and as a result of these promises, Plaintiff suffered financial injury. Because the Court concludes the purported contract is invalid and Plaintiff concedes that it did not follow the RFEI process, the Court will focus its discussion on whether the manifest injustice exception is plausibly pled.

New York courts have held that "[t]hose who deal with the government are expected to know the law, and cannot rely on the conduct of government agents contrary to law as a basis for 'manifest injustice' claims." *Id.* at 202 (quoting *New York State Med. Transporters Ass'n, Inc. v. Perales*, 77 N.Y.2d 126, 131 (1990)). As such, in cases where municipality defendants have failed to pay for work performed under contracts found to be inconsistent with statutory or regulatory requirements, appellate courts have dismissed claims for breach of contract and promissory estoppel. *Id.* 916 F.3d at 203 (citing *Michael R. Gianatasio v. City of New York*, 159 A.D.3d 659, 660 (N.Y. App. Div. 2018)); *see also Airday v. City of New York*, 406 F. Supp. 3d 313, 319–20 (S.D.N.Y. 2019) (collecting cases); *Casa Wales Hous. Dev. Fund Corp. v.*

*N.Y.C.,* 11 N.Y.S.3d 31, 32 (App. Div. 1st Dep't 2015) (internal quotation marks and citations omitted) ("The courts of this state have long held that no implied contract to pay for benefits furnished by a person under an agreement[,] which is invalid because it fails to comply with statutory restrictions and inhibitions[,] can create an obligation or liability of the city."). Consistent with these rulings, the Court finds Plaintiff does not adequately plead manifest injustice; therefore, Defendant's motion is **GRANTED** as to Plaintiff's second claim.

### III. Fraud Based Claims

#### a. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must show that:

(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). "Liability for negligent misrepresentation may be imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 500 (S.D.N.Y. 2018) (quoting *Amusement Indus., Inc. v. Stern*, 786 F.Supp.2d 758, 778 (S.D.N.Y. 2011)); *see also Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (N.Y. 1996) (In determining if a negligent misrepresentation claim is plausibly pled, New York courts consider: (1) "whether the person making the representation held or appeared to hold unique or special expertise;" (2) "whether a special relationship of trust or confidence existed between the parties;" and (3) "whether the speaker was aware of the use to which the information would be

9

put and supplied it for that purpose."). Several "[c]ourts in this circuit have held that a determination of whether a special relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage." *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 416 (S.D.N.Y. 2010)).

In this case, Defendant argues Plaintiff does not sufficiently plead a negligent misrepresentation claim because it did not owe Plaintiff a duty and otherwise was not in a special relationship with it. Additionally, Defendant asserts the representations identified in the Complaint are inactionable because they concern future conduct. By contrast, Plaintiff argues a special relationship and duty can be inferred based on its specialized expertise and Defendant's reference to it as a "Digital Agent" or "Digital Partner." Accordingly, the Court will focus its inquiry on whether Plaintiff plausibly alleges the first element.

Generally, courts have held "[p]rofessionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients." *Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, No. 16-CV-6356, 2017 WL 2963501, at *19 (S.D.N.Y. July 11, 2017), *aff'd,* 729 F. App'x 124 (2d Cir. 2018) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)). However, here, Plaintiff appears to be a marketing and branding firm. At best, Plaintiff's Complaint alleges it has "'superior knowledge of the particulars of its own business practice,' which 'is insufficient' to show a special relationship." *Id.* (quoting *Levantino v. Starwood Mortg. Capital LLC*, No. 15 Civ. 5349, 2015 WL 7430860, at *6 (S.D.N.Y. Nov. 20, 2015)).

Further, although Plaintiff alleges the Defendant was aware of the use to which its reference to Plaintiff as its "Digital Agent" or "Digital Partner" would be put, Plaintiff does not

10

plausibly allege Defendant utilized these references to encourage Plaintiff to make significant financial investments toward the project. *See e.g.*, Compl. ¶ 25 ("In January of 2016, executives from Microsoft toured the World Trade Center site along with [Plaintiff] and [Defendant] officials. Following said site tour, [Plaintiff] met with Microsoft executives at Microsoft's mid-town Manhattan offices. During that meeting [Defendant] introduced [Plaintiff] to Microsoft as their official 'Digital Agent' and 'Digital Partner' for the World Trade Center "). In other words, Defendant's use of the term "Digital Agent" is too attenuated from Plaintiff's financial investments in developing the WTC plan, such that the Court cannot conclude Plaintiff's reliance was reasonably justified. Accordingly, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's negligent misrepresentation claim.

### b. Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance." *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 36 (N.Y. App. Div. 1st Dep't 1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). To satisfy the element of damage, a Plaintiff must establish proximate causation. *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 489 (S.D.N.Y. 2013).

Additionally, fraudulent misrepresentation claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a complaint alleging fraudulent

misrepresentation under New York law must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "A statement is 'fraudulent' if it was falsely made, or caused to be made, with the intent to deceive." *United States v. Sabbeth*, 262 F.3d 207, 217 (2d Cir. 2001) (citation omitted).

In this case, Defendant argues Plaintiff's allegations have not satisfied Rule 9(b). Despite Plaintiff's arguments to the contrary, the Court agrees. For example, although Plaintiff asserts the Defendant's representatives and General Manager made material false representations concerning the parties' relationship and its intent to take advantage of Plaintiff's work, Plaintiff either fails to identify specific statements or explain why these statements were false. *See e.g.*, Compl. ¶ 24 (Defendant's "staff introduced [Plaintiff] as [its] official and authorized 'Digital Agent' for the World Trade Center to multiple partners of [Plaintiff] at the World Trade Center complex and encouraged those parties to work with [Plaintiff] as such").

IV. **Leave to Amend**

Pursuant to Federal Rules of Civil Procedure 15(a)(1) a party may amend its complaint once without leave of court up to 21 days after the service of either a responsive pleading or various Fed. R. Civ. P. 12 motions. *See* Fed. R. Civ. P. 15(a)(1). After that time has expired, any amendment requires the consent of the opposing parties or leave of court. *See* Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) states "the court should freely give leave when justice so requires." *Id*. The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458,

462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178). Where "the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile" courts in this circuit have denied motions to amend a complaint. *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). The Court finds that Defendant has not made a showing of bad faith or prejudice. Accordingly, Plaintiff is **GRANTED** leave to amend its Complaint.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is **GRANTED**. However, Plaintiff is **GRANTED** leave to amend its Complaint.

**SO ORDERED.**
**Dated:** **March 26, 2020**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**